1316

Carol A. BILLIPS, Personal Representative for the Estates of Sanford R. Scott and Emily M. Scott, Appellant v. S. O. HAWKINS and Occupants of 4767 Rivers Avenue, Respondents.

(381 S. E. (2d) 210)

Court of Appeals

*Mary Duncan Shahid*, of *Belk, Howard, Cobb & Chandler*, Charleston, *for appellant.*

*O. Eugene Savedge* and *George J. Morris*, Charleston, *for respondents.*

Heard Feb. 21, 1989.

Decided April 10, 1989.

SHAW, Judge:

Appellants, hereinafter landlord, instituted this action in magistrate's court seeking to eject respondents, hereinafter tenant, for failure to pay rent when due. A magistrate's jury found in favor of the landlord. The tenant appealed to the circuit court which reversed the jury verdict and reinstated the lease. The landlord appeals. We reverse. ·

On February 11, 1960, Sanford R. Scott and Emily M. Scott (landlord) entered into an "Option to Lease" agreement with S. O. Hawkins (tenant). The agreement provided for lease of the premises to the tenant for an initial term of ten years with twenty-five additional years available at the option of the tenant. The agreed rental rate was $200 per month for the first fifteen years and $400 per month thereafter payable in advance on the first day of each month. The agreement further provided for the construction of a building on the premises by the tenant and forfeiture of money held in escrow for failure to timely erect the building. It provided no specific remedy for failure to pay rent when due.

Mr. Hawkins assigned the lease to Associated Distributors which later formed a subsidiary company, Associated Properties, to which the lease was assigned. In November of 1986, Associated Distributors merged with Charles F. Cates and Sons and the lease followed the merger. At the time of the hearing, McCall Heating and Air Conditioning had subleased the property. The building on the property, erected by Mr. Hawkins, was insured for $250,000.

Mrs. Oliver, administrative assistant to Mr. Hawkins, had handled the lease payments in the past. Following the

merger of Associated Distributors with Charles F. Cates and Sons, she continued to make the lease payments through her office through February, 1987, at which time the files were transferred to Charles F. Cates and Sons in North Carolina. An employee of Charles F. Cates and Sons testified that, through an oversight, the March and April, 1987 payments were not made, apparently due to confusion resulting from the transfer of the files to North Carolina.

On April 7, 1987, the landlord served a writ of eviction. The tenant immediately tendered payment of the back rent and offered to pay all attorney's fees and costs incurred by the landlord with respect to the nonpayment of rent. The landlord refused the payment and this action ensued.

The magistrate's jury returned a verdict for the landlord and the tenant appealed to the circuit court. The trial judge in the circuit court reversed the jury verdict, finding the eviction resulted in an unconscionable forfeiture of improved property and the jury's verdict resulted from passion, prejudice and caprice.

§ 27-37-10 South Carolina Code of Laws, 1976, entitled "Grounds for ejectment of tenant" provides as follows:

> The tenant may be ejected upon application of the landlord or his agent when (a) such tenant fails or refuses to pay the rent when due or when demanded, (b) the term of tenancy or occupancy has ended or (c) the terms or conditions of the lease have been violated.

In reversing the jury verdict, the circuit court relied heavily on *Litchfield Co. v. Kiriakides*, 290 S. C. 220, 349 S. E. (2d) 344 (Ct. App. 1986). That case involved a commercial lease with substantial improvements worth more than $1,500,000 made to the property by the tenant and an expiration date of more than thirty years. This court noted that forfeitures are not favored in law or equity and will only be allowed when the intent is clear and no other construction is possible. However, the *Litchfield* lease specifically set forth that the tenant had a right to cure any default within ten days after written notice of failure to pay. The landlord failed to show notice of default preceded the tenant's tender of past due rent and we held, "Because the lease set forth the acts which would result in default, and the mode of terminating the

tenancy, the parties' rights are to be determined by a fair construction of the contract, not by statutory ejectment principles." In the case at hand, no such provision exists in the lease requiring the landlord to serve notice and construction of the agreement will not serve to overcome the controlling statutory law on ejectment.[1]

In the case of *Hairston v. Carolina Wholesale Furniture Co.*, 291 S. C. 371, 353 S. E. (2d) 701 (Ct. App. 1987) this court again addressed the issue of ejectment of a tenant under a commercial lease. There, the tenant inadvertently misaddressed an envelope and the monthly rent payment never reached its destination. The landlord refused a later tender and sought ejectment. In response to the tenant's argument of good faith inadvertence the court held:

> If we were to accept [the tenant's] reasoning, tenants could be evicted only if their failure to pay rent were willful. Such a rule is contrary to the established law of this State. Section 27-37-10, Code of Laws of South Carolina, 1976, authorizes ejectment of a tenant for failure to pay the rent when due.

While it is true the *Hairston* lease contained provisions for prompt payment of rent and eviction upon default, noting time was of the essence, the fact that the lease in the instant case did not stress the same will not save the tenant from the application of § 27-37-10 which clearly allows ejectment for failure to pay rent when due. The statute itself gives the landlord this right and it is not necessary it be repeated in the lease. Further, there is no provision in the present lease which could be construed to suspend the landlord's right of ejectment upon nonpayment of rent when due.

The circuit court also found passion, prejudice and caprice were injected into the jury's verdict. He found this occurred "when the Magistrate overruled the Defendant's objection to evidence being offered of the rent being paid by the sublessee, McCall's Heating & Air Conditioning, which was substantially more for the improved property than the

---

[1]It should be noted the Legislature has specifically provided protection for tenants holding residential leases by requiring notice be given by the landlord before he may terminate the rental agreement. *See* §§ 27-40-710 and 27-40-920 South Carolina Code (Supp. 1988).

rental being paid by the Defendant, S. O. Hawkins, to the Scotts."

First, we note a review of the record shows no such objection was made to the question of how much rent the sublessee was paying the tenant. Further, the attorney for the tenant previously stated "in the interest of speed, we certainly admit that this is a subtenant and we will admit what he pays us." We therefore find no error on the part of the magistrate as to the admission of this evidence.

For the foregoing reasons, the order of the circuit court is reversed.

BELL and GOOLSBY, JJ., concur.